1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10   NORMA RAMIREZ,                    )   Case No. ED CV 09-1371-PJW
                                       )
11            Plaintiff,               )
                                       )   MEMORANDUM OPINION AND ORDER
12        v.                           )
                                       )
13   MICHAEL J. ASTRUE,                )
     Commissioner of the              )
14   Social Security Administration,   )
                                       )
15            Defendant.               )
     _____)

16

17                                    I.

18                             INTRODUCTION

19        Before the Court is Plaintiff's appeal of a decision by Defendant

20   Social Security Administration ("the Agency"), denying her

21   applications for Disability Insurance benefits ("DIB") and

22   Supplemental Security Income ("SSI").  Plaintiff claims that the

23   Administrative Law Judge ("ALJ") erred in failing to properly

24   consider: 1) lay witness testimony; 2) a treating clinician's opinion;

25   3) the opinions of two treating psychiatrists; 4) a state reviewing

26   psychiatrist's functional assessment; 5) a treating psychiatrist's

27   functional assessment; and 6) the severity of Plaintiff's mental

28   impairment.  She claims further that he failed to pose a complete

hypothetical question to the vocational expert and also erred when he determined that she could perform her past relevant work as an accounting clerk.  For the following reasons, the Court concludes that the ALJ erred in his treatment of the mental health evidence and remands for further proceedings consistent with this opinion.

II.

SUMMARY OF PROCEEDINGS

Plaintiff applied for DIB and SSI on April 9, 2007, alleging that she had been unable to work since March 31, 2001, because of major depression, a panic disorder, anxiety, and pain.  (Administrative Record ("AR") 131-39.)  The Agency denied the applications initially and on reconsideration.  (AR 64-75.)  Plaintiff then requested and was granted a hearing before an ALJ.  (AR 78-82.)  Plaintiff appeared with counsel and testified at the hearing on October 16, 2008.  (AR 21-33.)  On April 3, 2009, the ALJ issued a decision denying benefits.  (AR 7-20.)  Plaintiff appealed to the Appeals Council, which denied review.  (AR 1-6.)  She then commenced the instant action.

III.

DISCUSSION

A.   Lay Witness Testimony

In her first claim of error, Plaintiff contends that the ALJ erred by failing to provide germane reasons for rejecting the written "testimony" of her daughter, Terry Ramirez.  (Joint Stip. at 3-5.)  The Court finds this claim to be without merit.

An ALJ must consider lay witness testimony.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(d)(4),(e).  Nevertheless, an ALJ need only give reasons

2

that are "germane" to the testimony in order to reject it. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

In an August 13, 2007 Third Party Function Report, Plaintiff's daughter stated, among other things, that Plaintiff needed to be reminded to take her medicine; only rarely cooked hot meals because she forgot what she was doing and fell asleep with the food on the stove; got very nervous when driving a car; could not pay bills or write out checks; panicked when around a crowd of people; and was limited in her ability to lift, stand, walk, and climb stairs. (AR 241-44.) She also stated that Plaintiff did not handle stress well and lacked the patience to concentrate. (AR 246.) These statements closely mirrored Plaintiff's own statements on a form she submitted to the Agency the same day.[1] (AR 247-54.)

The ALJ rejected the daughter's statements because they mirrored Plaintiff's, which the ALJ found to be incredible. (AR 18-20.) Plaintiff has not challenged the ALJ's credibility finding, thus, the Court accepts it. Where, as here, the lay witness testimony mirrors the claimant's testimony and the claimant is found to be not credible, the ALJ may reject the lay witness testimony for that reason alone. *See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that ALJ gave germane reason for rejecting claimant's wife's testimony where it was similar to claimant's own complaints that were properly rejected); *see also Cleveland v. Astrue*, 2010 WL 1678294, at *8 (C.D. Cal. Apr. 23, 2010) (ALJ's failure to expressly provide reason for rejecting lay witness statements was harmless error

---

[1] Plaintiff concedes that her daughter prepared both reports. (Joint Stip. at 4.)

3

1  where statements mirrored claimant's testimony that was properly found
2  not credible).  As such, the ALJ's rejection of the daughter's
3  testimony is affirmed.

4       B.   <u>The Mental Health Evidence</u>

5       The ALJ concluded that Plaintiff did not suffer from a severe
6  mental impairment.  (AR 15-17.)  In claims two through seven,
7  Plaintiff takes issue with the ALJ's findings in this regard.  She
8  contends, among other things, that the ALJ did not provide legally
9  sufficient reasons for rejecting various physicians' opinions and, as
10  a consequence, erred in finding that Plaintiff's mental impairment was
11  not severe.  For the following reasons, the Court concludes that the
12  ALJ erred.

13       In August 2000, Plaintiff was driving a car for work when she was
14  involved in an accident.  (AR 375.)  Thereafter, she complained of
15  depression and anxiety and obtained treatment, including therapy and
16  medication, from psychiatrist Herbert Marshak and psychologist Roland
17  Chabot between March 2001 and February 2002.  (AR 378-80.)  On January
18  14, 2002, Dr. Chabot diagnosed her with major depressive disorder,
19  single episode, and assigned a Global Assessment of Functioning
20  ("GAF") score of 50.  (AR 378.)

21       In May 2002, a worker's compensation examiner, Dr. Donald
22  Feldman, conducted a mental status evaluation of Plaintiff, which
23  revealed that she was oriented, dressed appropriately, and that her
24  speech and thought processes were normal.  (AR 382.)  Dr. Feldman
25  determined that Plaintiff's psychiatric disability was "zero to
26  slight."  (AR 389.)  He believed that she would have a "slight
27  disability" in relating to people and influencing people, making
28  generalizations, evaluations or decisions without supervision, and

4

accepting and carrying out responsibility for directions, control and planning.  (AR 389.)  He concluded that, from a psychiatric perspective, Plaintiff was "fully capable of her usual and customary work."  (AR 389.)

In July 2003, Arthur Gutierrez, a social worker, conducted an outpatient assessment of Plaintiff at Imperial County Behavioral Health Services.  (AR 339-42.)  Plaintiff reported to Gutierrez that she had been taking Paxil, an anti-depressant, for two years.  (AR 339.)  Though her mental health status was largely unremarkable, she complained of a depressed and anxious mood and problems with worries, memory, concentration, disruptive sleep, muscle tension, and fatigue. (AR 340, 341.)  Gutierrez diagnosed major depressive disorder, recurrent, severe, panic disorder without agoraphobia, and generalized anxiety disorder.  (AR 341.)  He assigned a GAF score of 50.  (AR 341.)  On September 12, 2003, an Imperial County Behavioral Health Services "Patient Progress Record" set forth the identical diagnosis. (AR 356.)

In January 2004, Dr. M. Becraft, a state agency psychiatrist, reviewed Plaintiff's medical records at the request of the Agency. (AR 328-37.)  He found that the medical evidence did not support a finding of an impairment *before* Plaintiff's date last insured of March 2002, but disagreed with Dr. Feldman's determination that she had no impairment because it was inconsistent with her reported social limitations and panic attacks.  (AR 337.)  Dr. Becraft found that therapy had improved Plaintiff's condition but, nevertheless, determined that she would be moderately limited in her ability to understand, remember, and carry out detailed instructions, and in her ability to interact appropriately with the public.  (AR 333-34.)  Dr.

5

1    Becraft concluded that Plaintiff would be limited to "[non-public
2    simple repetitive tasks] for now."  (AR 337.)

3        On March 3, 2006, Plaintiff underwent an initial assessment at
4    the Los Angeles County Department of Mental Health.  (AR 612-17.)  It
5    was noted that Plaintiff had been taking Paxil, Buspar (an anti-
6    anxiety medication), and Seroquel (an anti-psychotic medication) for
7    more than a year and that these medications were "effective."  (AR
8    613.)  Plaintiff's grooming, speech, orientation, intellectual
9    functioning, and thought process were normal, though her immediate
10   memory was impaired and she complained that she "hears doorbells" and
11   "see[s] shadows."  (AR 616.)  Plaintiff was diagnosed with a major
12   depressive disorder, recurrent, with psychotic features; and a panic
13   disorder with agoraphobia.  (AR 617.)  She was not given a GAF score.[2]

14       On September 28, 2006, consultative psychiatrist Dr. Mehboob Ali
15   Makhani evaluated Plaintiff.  (AR 621-24.)  He noted that Plaintiff's
16   appearance and behavior were unremarkable, her thought processes were
17   linear and goal directed with no evidence of hallucinations or
18   delusions, she was oriented, and she demonstrated appropriate
19   judgment.  (AR 622-23.)  He diagnosed depressive disorder, not
20   otherwise specified, with a "rule-out" diagnosis for major depressive
21   disorder, adjustment disorder, and mood disorder.  (AR 623.)  Dr.
22   Makhani assessed Plaintiff's GAF at between 60 and 65.  (AR 623.)  He
23   concluded that she would have no work-related limitations as a result
24   of her psychiatric condition.  (AR 623.)  Based on Dr. Makhani's

25

26       [2]  Though the ALJ found (and the parties seem to agree) that the
     unnamed clinician assessed a GAF score of 30, (AR 16), the record does
27   not support this finding.  In fact, the clinician did not indicate a
     GAF score, rather, he or she wrote "30 x NO" under "DMH Dual Diagnosis
28   Code," the meaning of which the parties have not addressed.  (AR 617.)

opinion, state agency reviewing psychiatrist Dr. M. G. Salib also concluded in December 2006 that Plaintiff had no functional limitations due to her mental impairment.  (AR 641-51.)

On May 14, 2007, consulting psychiatrist Dr. Romualdo Rodriguez evaluated Plaintiff and found that her appearance, behavior, and thought processes were all unremarkable.  (AR 704-705.)  Dr. Rodriguez made no psychiatric diagnosis and concluded that Plaintiff had no functional limitations from a psychiatric standpoint.  (AR 706.)  Dr. Loomis, a state agency reviewing psychiatrist, concurred on May 21, 2007, finding no psychiatric impairment.  (AR 714.)

On January 23, 2008, treating psychiatrist Dr. Maged Estafan submitted a check-the-box form to Plaintiff's counsel, in which he indicated that Plaintiff had "extreme" limitations (meaning that Plaintiff had no useful ability to function) in almost every area of functioning, including the ability to understand and remember very short and simple instructions.  (AR 811-12.)  Dr. Estafan found that Plaintiff's ability to maintain socially appropriate behavior would be moderately limited and her ability to set realistic goals would be markedly limited.  (AR 811-12.)

In his April 3, 2009 decision, the ALJ found that the objective medical evidence did not support Plaintiff's allegations that she could not work due to depression and anxiety.  (AR 15.)  He noted the reports of examining psychiatrists Dr. Feldman, Dr. Makhani, and Dr. Rodriguez, in which they concluded that Plaintiff was not functionally impaired.  (AR 15-17.)  He also noted social worker Gutierrez's July 2003 diagnosis of severe, recurrent major depression, but pointed out that Plaintiff treated it with only monthly counseling at Imperial County Behavioral Health Services from July to November 2003.  (AR

7

16.)  As for the March 2006 Los Angeles County Department of Mental
Health assessment, the ALJ deemed it "noteworthy," but determined
that, because Plaintiff received only a few months of therapy at the
facility, the condition had not lasted for the requisite 12 months.
(AR 16.)  The ALJ expressly rejected the form submitted by Dr. Estafan
in January 2008, (AR 811-12), because it was "completed by an
unidentifiable person and there is no treating or progress records to
support this assessment."  (AR 17.)  The ALJ failed to mention Dr.
Becraft's January 2004 assessment.  Having found that Plaintiff had no
severe mental impairment, the ALJ determined that she retained the
residual functional capacity to perform light work, with some
additional postural and environmental restrictions, but with no
restrictions due to mental limitations.  (AR 17.)

1.  <u>Arthur Gutierrez's Opinion</u>

Plaintiff argues that the ALJ was required to either accept or
reject social worker Arthur Gutierrez's July 2, 2003 opinion,
including the GAF score of 50.[3]  In her view, Gutierrez's opinion was
entitled to the same weight as a doctor's because Gutierrez was
working closely with a psychiatrist from the clinic when he was
treating Plaintiff.  (Joint Stip. at 7-9.)

As an initial matter, the Court rejects Plaintiff's invitation to
find that, because Gutierrez was "working in conjunction with" Dr.
Brolaski at the time of the assessment, Gutierrez should be considered

---

[3]   A GAF score of 41-50 indicates "[s]erious symptoms (e.g.,
suicidal ideation, severe obsessional rituals, frequent shoplifting)
OR any serious impairment in social, occupational, or school
functioning (e.g., no friends, unable to keep a job)."  American
Psychiatric Association, Diagnostic and Statistical Manual of Mental
Disorders at 34 (4th Ed. 2000).

8

a treating physician whose opinion is entitled to controlling weight.
(Joint Stip. at 8-9.)   The general rule is that a social worker/
therapist is not entitled to treating physician status.   *See*, *e.g.*, 20
C.F.R. §§ 416.913(a)(1) and (3); *Gomez v. Chater*, 74 F.3d 967, 971
(9th Cir. 1996).   Though there is an exception to this general rule
for those rare circumstances where a therapist is working so closely
with a doctor that the therapist's treatment is merely an extension of
the doctor's, *Gomez*, 74 F.3d at 971 (holding opinion of a nurse
practitioner could be viewed as an acceptable medical source where she
acted so "closely under the supervision" of the treating physician her
opinion should be "properly considered as part of the opinion" of the
physician), there is no evidence that that type of doctor-therapist
relationship existed here.   It appears that Gutierrez conducted
Plaintiff's intake interview on his own and the assessment form he
filled out in conjunction with that interview was not co-signed by Dr.
Brolaski or any other doctor.   (AR 339-42.)   The fact that Dr.
Brolaski co-signed Plaintiff's "client plan" on July 24, 2003, almost
three weeks after Gutierrez completed it, does not change the
analysis.   Further, there is no evidence that thereafter Gutierrez
worked with or under the close supervision of Dr. Brolaski in treating
Plaintiff or in preparing reports.

     That being the case, the ALJ was not required to grant the same
deference to Gutierrez's opinion that he would grant to a doctor's
opinion.   *See* Social Security Ruling ("SSR") 06-03p (citing 20 C.F.R.
§§ 404.1527(d), 416.927(d)); *see also Thomas v. Astrue*, 2009 WL
151488, at *3 (C.D. Cal. Jan. 21, 2009) ("[T]he reports of licensed
clinical social workers are considered 'other sources of evidence, not
evidence from an 'acceptable medical source.'"").   Rather, he was only

9

required to explain the weight given to the opinion in sufficient detail so that Plaintiff (and the Court) could understand it.  SSR 06-03p.

The ALJ fulfilled that obligation here.  He read and considered the social worker's opinion, noting that Plaintiff's affect was flat and her mood was depressed, but that she was oriented times three and that she denied hallucinations, delusions, or paranoia.  (AR 16.)  The ALJ also noted that, despite Gutierrez's diagnosis of severe major depression, recurrent, Plaintiff received only monthly counseling and only from July to November 2003.  (AR 16.)  These were sufficient reasons to discount the social worker's opinion under SSR 06-03p.  As such, this claim does not merit remand or reversal.[4]

2.    The Imperial County Treating Psychiatrist's Opinion

Plaintiff argues that the ALJ erred by failing to address a diagnosis contained in a September 12, 2003 Imperial County Behavioral Health Services patient progress record.  (Joint Stip. at 16-17.)  The psychiatrist, whose name is illegible, reached the same findings as Gutierrez, i.e., that Plaintiff had a GAF of 50 and that he suffered from a major depressive disorder, a panic disorder, and a generalized anxiety disorder.  (AR 356.)  Though the ALJ erred when he failed to

---

[4]   The ALJ's failure to specifically discuss Gutierrez's GAF score of 50 was not error.  The ALJ was not required to discuss every piece of evidence, only significant, probative evidence.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  An individual GAF score--particularly one from a social worker--does not fall into this category.  *See*, *e.g.*, *Mitchell v. Astrue*, 2010 WL 1994695, at *9 (C.D. Cal. May 14, 2010) (concluding ALJ did not err in failing to separately discuss consultative psychiatrist's GAF rating of claimant); *Alvarez v. Barnhart*, 2002 WL 31466411, at *8 (W.D. Tex. Oct. 2, 2002) (finding ALJ's failure to mention GAF score not reversible error).

1    discuss this assessment, the Court concludes that the error was

2    harmless error.

3         An ALJ's failure to address pertinent evidence is harmless if the

4    error did not affect the outcome of the case.  *See Stout*, 454 F.3d at

5    1055-56 (defining harmless error in the context of social security

6    cases as one not affecting the ultimate determination of disability).

7    The medical record Plaintiff raises in issue here appears to have been

8    completed by a psychiatrist (the same illegible signature appears on a

9    medication record sheet under "doctor's initials" (AR 343)), though

10   the record does not clarify who the doctor is or whether he or she had

11   a treating relationship with Plaintiff.  Thus, the evidence is not so

12   compelling as to require remand.  Moreover, it is not clear whether

13   the September 2003 diagnosis was simply copied from Gutierrez's July

14   2003 assessment--the second page of the record states "See Eval. 7-2-

15   03 for details" (AR 356)--or whether it was based on independent

16   findings by the doctor.

17        Even assuming that the psychiatrist in question had an ongoing

18   treating relationship with Plaintiff, the ALJ was not bound to give

19   controlling weight to the opinion because it was not supported by

20   treatment records and was not consistent with other substantial

21   evidence in the record.  *See Orn v. Astrue*, 495 F.3d 625, 631 (9th

22   Cir. 2007).  Here, the unknown psychiatrist's diagnosis was plainly

23   contradicted by the opinions of examining psychiatrists Feldman,

24   Makhani, and Rodriguez.  Moreover, as the ALJ pointed out, Plaintiff

25   received only five months of treatment at this facility in 2003.  (AR

26   16, 339-63.)  Thus, it is safe to assume that Plaintiff's condition

27   was not so debilitating as to render her disabled.

28

1    Though the ALJ should have discussed the report, his failure to
2  do so does not warrant remand where, as here, the report does not
3  establish that Plaintiff had an ongoing condition that rendered her
4  disabled and, further, where it appears to merely repeat the findings
5  of an earlier evaluation, which was not material.  *See*, *e.g.*, *Howard,*
6  341 F.3d at 1012 (holding ALJ's failure to discuss treatment
7  provider's opinion not error where review was based on earlier report
8  that ALJ did discuss).  For these reasons, this claim is without
9  merit.

10          3.   <u>The Los Angeles County Treating Psychiatrist's Opinion</u>
11      Plaintiff argues that the ALJ failed to properly consider a March
12  2006 assessment from a doctor at the Los Angeles County Department of
13  Mental Health.  (Joint Stip. at 17-19.)  For the following reasons,
14  the Court agrees that the ALJ erred.[5]

15      A treating doctor's opinion is given more weight than a non-
16  treating doctor's opinion.  *Orn*, 495 F.3d at 632 (citing *Lester v.*
17  *Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  Even where the treating
18  doctor's opinion is contradicted by another doctor, the ALJ may not
19  reject it without providing specific and legitimate reasons for doing
20  so that are supported by substantial evidence.  *Id.*

21      Here, in 2006, a Los Angeles County Mental Health Department
22  doctor diagnosed Plaintiff with major depressive disorder with
23  psychotic features, noting Plaintiff's complaints of auditory and
24  visual hallucinations.  (AR 617.)  The ALJ found this assessment to be

25

26          [5]  Plaintiff argues that the assessment was carried out by a
    psychiatrist.  (Joint Stip. at 17-19.)  The provider's signature is
27  illegible, but it appears that he or she was a psychologist, not a
    psychiatrist, judging by the letters "PSYD" next to the signature.
28  (AR 617.)  Either way, it does not affect the Court's analysis here.

                                  12

"noteworthy," but found that it was not supported by the medical
evidence because her treatment consisted of only a few months of
therapy and, thus, the condition did not last for 12 months or more.
(AR 16.)  As Plaintiff points out, however, her treatment in Los
Angeles ended when she moved to Riverside County.  Thereafter, the
record shows that she began treatment with Riverside County Department
of Mental Health in September 2006 and continued to receive treatment
through February 2008.  (Joint Stip. at 18-19; AR 718-19, 721-33, 814-
30.)  Thus, the ALJ's justification for rejecting the Los Angeles
County doctor's opinion--which undermined the ALJ's finding that
Plaintiff's mental impairment was not "severe"--does not withstand
scrutiny.  Accordingly, the issue must be remanded for
reconsideration.

          4.  <u>Dr. Becraft's Opinion</u>

     Plaintiff contends that the ALJ's failure to consider Dr.
Becraft's January 14, 2004 mental residual functional capacity
assessment was error.  (Joint Stip. at 19-21.)  For the following
reasons, the Court agrees.

     Although an ALJ is not bound by the findings of an agency
physician, he "must consider" such findings and must explain the
weight he gives to them.  20 C.F.R. § 404.1527(f)(2)(I); SSR 96-6p.
Here, Dr. Becraft found that Plaintiff would have moderate limitations
in her ability to understand, remember, and carry out detailed
instructions, and in her ability to interact appropriately with the
public, and concluded that she should be limited to non-public simple
repetitive tasks.  (AR 333-34, 337.)  In contrast to Dr. Becraft's
findings, the ALJ found no functional limitations as a result of
Plaintiff's alleged mental impairment.  (AR 17.)  This was error.

                              13

The Agency argues that the ALJ's error was harmless, apparently because it believes that Dr. Becraft's opinion was "not probative of disability during the period under review" and because other state agency physicians subsequently found that Plaintiff had no determinable mental impairment or functional limitations. (Joint Stip. at 12, 13.)  Although an ALJ's failure to address a reviewing physician's opinion may be harmless error when the ALJ's opinion is consistent with that opinion, *see*, *e.g.*, *Tibbs v. Astrue*, 2008 WL 2705175, at *7-8 (C.D. Cal. July 7, 2008), the Court cannot find the error harmless here.

First, the ALJ did not reject Dr. Becraft's opinion for the reasons now suggested by the Agency and the Court cannot look beyond the four corners of the ALJ's decision in determining why he rejected it.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  Second, the Agency appears to overlook the fact that Plaintiff applied for both DIB and SSI.  The evidence of disability after her date last insured (March 2002) would be material to the SSI application.  *See*, *e.g.*, *Armstrong v. Comm'r, Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) (noting ALJ granted SSI application after determining that claimant became disabled after date last insured).  Third, Dr. Becraft's findings from January 2004 are not necessarily called into question by the later findings from December 2006 and May 2007 of Dr. Salib and Dr. Loomis.  Because Dr. Becraft's opinion supports Plaintiff's claim that her mental impairment was severe, the ALJ should have addressed it.  On remand the ALJ must consider the opinion and explain the weight that he gives it.

14

5.   <u>Dr. Estafan's Assessment</u>

Plaintiff next argues that the ALJ provided insufficient reasons for rejecting the January 23, 2008 "work capacity evaluation" assessment of his treating psychiatrist, Dr. Maged Estafan. (Joint Stip. at 21-23.) Here, the Court disagrees.

Dr. Estafan indicated on a check-the-box form that he submitted to Plaintiff's counsel that she would have "extreme" limitations in almost every functional area, including the ability to understand and remember very short and simple instructions. (AR 811-12.) He also indicated that her impairment would cause her to miss three or more days of work per month. (AR 812.)

The ALJ rejected this opinion on the grounds that he could not discern who had completed and signed the form and because there were no treating or progress records to support it. (AR 17.) Although Plaintiff correctly notes (and the Agency concedes) that it was signed by Dr. Estafan, who treated Plaintiff at Riverside County Department of Mental Health (AR 821), the ALJ was entitled to reject the opinion on the basis that it was not supported by treatment notes. None of the County's progress notes, or any other medical evidence in the record, suggests that Plaintiff would have the extreme limitations found by Dr. Estafan. Treating psychiatrist Dr. Morales noted in October 2007 that Plaintiff was showing "significant improvement." (AR 823.) Dr. Estafan's own notes from January 8 and February 1, 2008, are unremarkable. (AR 814, 816.) Because this was a specific and legitimate reason for rejecting Dr. Estafan's functional assessment and it is supported by substantial evidence, it will be upheld. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6.   <u>The ALJ's Finding That Plaintiff's Mental Impairment</u>
<u>Was Not Severe</u>

Plaintiff argues that, in light of the ALJ's failure to properly consider the mental health record, he erred in concluding that her mental impairment was not severe.  (Joint Stip. at 23-25.)  For the following reasons, the Court concludes that the ALJ must reconsider his finding regarding the severity of Plaintiff's mental impairment on remand.

At step two of the sequential evaluation process, an ALJ is tasked with identifying a claimant's "severe" impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A severe impairment is one that significantly limits an individual's physical or mental ability to do basic work activities.  *Smolen*, 80 F.3d at 1290; 20 C.F.R. §§ 404.1521(a), 416.921(a).  "Basic work activities" are "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  For an impairment to be severe, it must have lasted or be expected to last for a continuous period of at least 12 months.  20 C.F.R. §§ 404.1509, 416.909.  The step-two inquiry is intended to be a "de minimis screening device."  *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

As set forth above, the ALJ erred in not considering Dr. Becraft's opinion and in rejecting the Los Angeles County treating psychiatrist's opinion for reasons that are not supported in the record.  On remand, the ALJ should address those opinions and reconsider whether, in light of that analysis, Plaintiff has a severe mental impairment.

16

1       C.   <u>Plaintiff's Remaining Claims</u>

2       Plaintiff contends that the ALJ erred in failing to incorporate

3  all of her limitations in his hypothetical question to the vocational

4  expert and in determining that she could perform her past relevant

5  work.  (Joint Stip. at 25-27, 28-31.)  In light of the Court's ruling

6  on the other issues outlined above, the ALJ will necessarily be

7  required to reconsider these issues on remand as well.

8                                IV.

9                     CONCLUSION

10       For these reasons, the Agency's decision is reversed and the case

11  is remanded for further proceedings consistent with this opinion.

12       IT IS SO ORDERED.

13       DATED:  <u>March 29, 2011</u>

14

15                            _____

16                           PATRICK J. WALSH
                             UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28  S:\PJW\Cases-Soc Sec\RAMIREZ. N 1371\Memo_Opinion.wpd